TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

BILL LOCKYER
Attorney General

---

|  |  |  |
|---|---|---|
| OPINION | : | No. 99-401 |
| of | : | July 26, 1999 |
| BILL LOCKYER<br>Attorney General | : | |
| GREGORY L. GONOT<br>Deputy Attorney General | : | |

---

THE HONORABLE JACK O'CONNELL, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following question:

May a school district construct an elementary school on land designated for "agricultural, open space, or rural land use" under a county ordinance that was adopted by the electorate as an initiative measure amending the county's general plan?

CONCLUSION

A school district may construct an elementary school on land designated for "agricultural, open space, or rural land use" under a county ordinance that was adopted by the electorate as an initiative measure amending the county's general plan, provided the governing board of the school district, by vote of two-thirds of its members, renders the ordinance inapplicable to the proposed use of the property and such action is not arbitrary and capricious.

ANALYSIS

We are informed that a school district intends to construct an elementary school on property that has been operated as a ranch in a rural area of the county. The land is designated for "agricultural, open space, or rural land use" under a voter approved ordinance that amended the county's general plan. May the school district construct the school even though such use would be inconsistent with the county's general plan? We conclude that, provided certain statutory procedures are followed, the school district may proceed with its plans.

As we observed in 71 Ops.Cal.Atty.Gen. 332, 335 (1988), "it is accepted as a general matter that neither the state nor its agencies is subject to local building or zoning regulations unless the Legislature consents to such regulation." (See *Hall* v. *City of Taft* (1956) 47 Cal.2d 177, 183; *City of Orange* v. *Valenti* (1974) 37 Cal.App.3d 240, 244; *Town of Atherton* v. *Superior Court* (1958) 159 Cal.App.2d 417, 427; 68 Ops.Cal.Atty.Gen. 114, 118, 119 (1985); 56 Ops.Cal.Atty.Gen. 210, 211-212 (1973).) With respect to school districts, which are agencies of the state for the local operation of the state school system (*Hall* v. *City of Taft*, *supra*, 47 Cal.2d at 180-181; *City of Santa Clara* v. *Santa Clara Unified Sch. Dist.* (1971) 22 Cal.App.3d 152, 158), the Legislature has consented to a limited form of local regulation (71 Ops.Cal.Atty.Gen., *supra,* at 335; *City of Orange* v. *Valenti*, *supra*, 37 Cal.App.3d at 245).

The statutory scheme governing our analysis is Government Code sections 53090-53097.5.[1] Section 53090 provides:

"As used is this article:

"(a) 'Local agency' means an agency of the state for the local performance of governmental or proprietary function within limited boundaries. . . .

"(b) 'Building ordinances' means ordinances of a county or city regulating building and construction . . . .

Section 53091 states:

"Each local agency shall comply with all applicable building ordinances and zoning ordinances of the county or city in which the territory of the local agency is situated. On

---

[1] All section references herein are to the Government Code unless otherwise noted.

projects for which state school building aid is requested by a local agency for construction of school facilities the county or city planning commission in which said agency is located shall consider in its review for approval information relating to attendance area enrollment, adequacy of the site upon which the construction is proposed, safety features of the site and proposed construction, and present and future land utilization, and report thereon to the State Allocation Board. . . . Notwithstanding the preceding provisions of this section, this section does not require a school district or the state when acting under the State Contract Act to comply with the building ordinances of a county or city. Notwithstanding the preceding provisions of this section, this section does not require a school district to comply with the zoning ordinances of a county or city unless the zoning ordinance makes provision for the location of public schools and unless the city or county has adopted a general plan.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

Section 53094 provides:

"Notwithstanding any other provisions of this article except Section 53097, the governing board of a school district, by vote of two-thirds of its members, may render a city or county zoning ordinance inapplicable to a proposed use of property by such school district except when the proposed use of property by such school district is for nonclassroom facilities, including, but not limited to, warehouses, administrative buildings, automotive storage and repair buildings. The board shall, within 10 days, notify the city or county concerned of such action. If such governing board has taken such action the city or county may commence an action in the superior court of the county whose zoning ordinance is involved or in which is situated the city whose zoning ordinance is involved, seeking a review of such action of the governing board of the school district to determine whether it was arbitrary and capricious. The city or county shall cause a copy of the complaint to be served on the board. If the court determines that such action was arbitrary and capricious, it shall declare it to be of no force and effect, and the zoning ordinance in question shall be applicable to the use of the property by such school district."

Section 53097 states in turn:

"Notwithstanding any other provisions of this article, the governing board of a school district shall comply with any city or county ordinance (1) regulating drainage improvements and conditions, (2) regulating road improvements and conditions, or (3) requiring the review and approval of grading plans as these ordinance provisions relate to the design and construction of onsite improvements which affect drainage, road conditions, or grading, and shall give consideration to the specific requirements and conditions of city or county ordinances relating to the design and construction of offsite improvements. If a

school district elects not to comply with the requirements of city or county ordinances relating to the design and construction of offsite improvements, the city or county shall not be liable for any injuries or for any damage to property caused by the failure of the school district to comply with those ordinances."

In *City of Santa Clara* v. *Santa Clara Unified Sch. Dist.*, *supra*, 22 Cal.App.3d 152, the court examined the provisions of this statutory scheme with respect to the proposed construction of a school in a residential zone. The court observed in part:

> "When these sections are read as a whole, it is apparent that all local agencies are required to comply with city or county zoning ordinances (Gov. Code, § 53091), but that school districts are specifically authorized to exempt themselves from the purview of such ordinances by a two-thirds vote of their governing boards (Gov. Code, § 53094). The only reasonable interpretation of these sections is that a school district must abide by local zoning ordinances unless it chooses to exercise its right of exemption. The decision to render itself exempt is apparently one which the district may make at any time. Section 53094 contains no time limitation of any kind. Neither does that section limit a school district's discretion in any way except to provide that if the district's determination to exempt itself is arbitrary and capricious, it is subject to attack in the superior court." (*Id.*, at p. 158; fn. omitted.)

In a footnote to the foregoing statement, the court further explained:

> "This construction of Government Code sections 53090 through 53095, is entirely consistent with the Assembly Committee Report preceding their enactment. Thus, it appears that the Legislature deliberately accorded different treatment to school districts than to other local agencies because it was well aware that school construction was subject to almost complete control by the state. Sections 53090 through 53095 were primarily designed to insure that *other* local agencies which were not subject to such thorough control by the state could not claim exemption from city and county zoning requirements by virtue of the language contained in *Hall* v. *City of Taft*, *supra*. The Legislature accordingly provided in section 53094 that school districts, as opposed to other local agencies, should retain the right to exempt themselves from local zoning ordinances. [Citation.]" (*Id.*, at p. 158, fn. 3.)

> Thus, by a two-thirds vote, the governing board of a school district may exempt itself from a city's or county's zoning ordinances. The only basis upon which the claim of exemption may be blocked would be a judicial declaration that the school board's action was "arbitrary and capricious." In *City of Santa Clara* v. *Santa Clara Unified Sch. Dist.*, *supra*, 22 Cal.App.3d 152, the court observed with respect to the "arbitrary and capricious" standard:

". . . The district adopted the resolution [rendering the zoning ordinance inapplicable] because it believed that it had selected the best available site for the continuation high school and should proceed with construction despite the city's opposition. Although the selection of a school site by a school district involves an exercise of legislative and discretionary action and may not be challenged as to its wisdom, expediency or reasonableness, a school district must refrain from making such selection in an arbitrary and capricious manner. (*Arthur* v. *Oceanside-Carlsbad Junior College Dist.* (1963) 216 Cal.App.2d 656, 658.) . . ." (*Id.*, at pp. 161-162, fn. 4.)

Although sections 53090-53097.5 refer to building and zoning ordinances and not expressly to general plan ordinances, the latter are equally subject to the statutory scheme's provisions. (*Lawler* v. *City of Redding* (1992) 7 Cal. App.4th 778, 784 ["sections 53090 and 53091 recognize an intergovernmental immunity from building and zoning regulations, including compliance with . . . general plans"].) Moreover, the fact that this particular general plan ordinance was adopted as an initiative measure by the electorate does not change our analysis. Adoption of a general plan, like the adoption of a zoning ordinance, is a legislative act. (66 Ops.Cal.Atty.Gen. 258, 260 (1983); see § 65301.5) While county voters may amend the county's general plan to the same extent as the board of supervisors, they cannot adopt an amendment that makes it conflict with state law. (See *Arnel Development Co.* v. *City of Costa Mesa* (1980) 28 Cal.3d. 511, 524; *Bagley* v. *City of Manhattan Beach* (1976) 18 Cal.3d 22, 26-27; *Arnel* v. *City of Costa Mesa* (1981) 126 Cal.App.3d 330, 337; 80 Ops.Cal.Atty.Gen. 315, 316 (1997); 66 Ops.Cal.Atty.Gen., *supra*, at 261.) Accordingly, the ordinance in question must yield to the authorization contained in section 53094, permitting a school district under specified conditions to construct a school on property even though such use would not be in conformity with the general plan.

Finally, we note that a separate statutory scheme (§§ 65400-65403) allows certain local agencies to overrule a planning agency's disapproval of a project due to its inconsistency with an adopted general plan. (§ 65402, subd. (c).) However, the procedures outlined in section 53094, requiring a two-thirds vote of a school district board under the "arbitrary and capricious" standard, govern over the procedures set forth in section 65402. (§ 53095; *Lawler* v. *City of Redding*, *supra*, 7 Cal.App.4th at 783-784; see *People* v. *Superior Court (Hubbard)* (1991) 230 Cal.App.3d 287, 296.)

In answer to the question presented, therefore, we conclude that a school district may construct an elementary school on land designated for "agricultural, open space, or rural land use" under a county ordinance that was adopted by the electorate as an initiative measure amending the county's general plan, provided that the governing board of the school district, by vote of two-thirds of its members, renders the ordinance inapplicable to the proposed use of the property and such action is not arbitrary and capricious.

\* \* \* \* \*